MICHIGAN CANNERS & FREEZERS ASSOCIATION, INC v
AGRICULTURAL MARKETING & BARGAINING BOARD

Docket No. 56434. Argued October 10, 1975 (Calendar No. 6).—Decided August 25, 1976. Rehearing denied 398 Mich 951.

Defendant Agricultural Marketing and Bargaining Board accredited the Michigan Asparagus Growers Division of defendant Michigan Agricultural Cooperative Marketing Association, Inc., as the sole sales and bargaining representative of the Processing Asparagus Bargaining Unit over the objection of plaintiff Michigan Canners and Freezers Association, Inc. Plaintiffs Michigan Canners and individual members of the association brought an action seeking review of the decision under the Administrative Procedures Act and an injunction and declaratory judgment on the constitutionality and construction of the Agricultural Marketing and Bargaining Act. Ingham Circuit Court, Thomas L. Brown, J., dismissed the complaint, ruling that the Court of Appeals has jurisdiction to review all board action, and declining to examine the constitutionality of the act. The Court of Appeals, Danhof, P. J., and J. H. Gillis and Quinn, JJ., denied leave to appeal (Docket Nos. 20309, 20310). Plaintiffs appeal. *Held:*

1. Plaintiffs have raised important questions regarding the constitutionality and construction of the Agricultural Marketing and Bargaining Act without developing a factual record at trial. The claim that the act exceeds the police power of the state in particular requires full development of facts by both parties concerning the issues. To overcome the presumption of constitutionality which accrues to the statute plaintiffs must show either that there is no public purpose to be served by the statute or that there is no reasonable relationship between the remedy adopted by the Legislature and the public purpose.

2. Although the Agricultural Marketing and Bargaining Act provides that the Court of Appeals has jurisdiction to review action by the Agricultural Marketing and Bargaining Board,

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 6] 16 Am Jur 2d, Constitutional Law § 259 *et seq.*
[3] 20 Am Jur 2d, Courts §§ 98, 99.
[4, 5, 7] 2 Am Jur 2d, Administrative Law § 206.

plaintiffs need not follow the appellate procedure provided for in the statute they challenge as unconstitutional.

3. The circuit court also has subject matter jurisdiction over consideration of the assertion that the Administrative Procedures Act is applicable to the Agricultural Marketing and Bargaining Act. The Court of Appeals has original jurisdiction only for review of final orders of the Agricultural Marketing and Bargaining Board under that act. On remand to circuit court plaintiffs may raise questions of construction of the act as well as the constitutional issues.

4. The circuit court may not, however, consider the challenge to the accreditation of the bargaining unit on the merits because the Court of Appeals has original jurisdiction over such an appeal under the statute. The declaration of accreditation functions as a binding order 30 days after publication, absent a challenge meeting the requirements of the act. The Legislature did not intend to create a review system in which the accreditations of bargaining units are to be reviewed in a forum different from all other actions of the board.

Reversed and remanded to circuit court for consideration of the constitutional and statutory construction issues; jurisdiction retained.

Justice Coleman, Justice Fitzgerald concurring, concurred in part and dissented in part. She would hold: The claim that the Agricultural Marketing and Bargaining Act exceeds the police power of the state requires full development of the facts on a remand to the trial court, but discussion of the constitutional question should be left until a record of the facts is made. In the absence of a clear legislative directive, the review procedures provided for unfair practice cases should not be applied to accreditation. Unfair practice complaints demand prompt action, and the role of the Agricultural Marketing and Bargaining Board in those proceedings, in which it may order that violations cease or affirmative action be taken, differs greatly from its role in the accreditation process, where it merely determines whether producers have assented to accreditation of an association. The circuit court may review the declaration of accreditation, although orders concerning unfair practices must be reviewed directly by the Court of Appeals.

Opinion of the Court

1. Constitutional Law—Police Power.

The police power, an attribute of state sovereignty, may properly be exercised through regulations which tend to foster the

health, order, convenience and comfort of the people and to prevent and punish injuries and offenses to the public; the police power is elastic in nature, changing shape as varying social conditions demand correction.

2. CONSTITUTIONAL LAW—STATUTES—POLICE POWER—PUBLIC PURPOSE.

A party challenging a statute as exceeding the police power of the state carries the burden of overcoming the presumption of constitutionality which accrues to the statute and must show either that there is no public purpose to be served by the statute or that there is no reasonable relationship between the remedy adopted by the Legislature and the public purpose.

3. COURTS—JURISDICTION—CONSTITUTIONAL LAW—STATUTES.

Plaintiffs challenging the constitutionality of a statute and seeking injunctive relief are not necessarily required to follow the appellate procedure provided for in the statute challenged.

4. COURTS—JURISDICTION—ADMINISTRATIVE LAW—ADMINISTRATIVE PROCEDURES ACT—AGRICULTURAL MARKETING AND BARGAINING ACT.

Plaintiffs asserting that the Administrative Procedures Act is applicable to the Agricultural Marketing and Bargaining Act may bring an action for construction of the statute and for injunctive relief in circuit court although the agricultural act provides for original jurisdiction in the Court of Appeals for review of final orders of the Agricultural and Marketing Board (MCL 24.201 *et seq.*, 290.701 *et seq.*; MSA 3.560[101] *et seq.*, 12.94[101] *et seq.*).

5. ADMINISTRATIVE LAW—COURTS—JURISDICTION—AGRICULTURAL MARKETING AND BARGAINING BOARD—ACCREDITATION.

A declaration of accreditation of an agricultural bargaining unit by the Agricultural Marketing and Bargaining Board is an "order" under the Agricultural Marketing and Bargaining Act, which gives the Court of Appeals original jurisdiction over an appeal of an order of the board (MCL 290.705; MSA 12.94[105]).

OPINION CONCURRING IN PART AND DISSENTING IN PART

COLEMAN and FITZGERALD, JJ.

6. CONSTITUTIONAL LAW—POLICE POWER.

*The claim that the Agricultural Marketing and Bargaining Act exceeds the police power of the state requires full development of the facts on a remand to the trial court, but discussion of the*

*constitutional question should be left until a record of the facts is made. (MCL 290.701 et seq.; MSA 12.94[101] et seq.).*

7. ADMINISTRATIVE LAW—AGRICULTURAL MARKETING AND BARGAIN-
ING ACT—APPEAL AND ERROR—ACCREDITATION—UNFAIR PRAC-
TICES.

*A declaration of accreditation of an agricultural bargaining unit by the Agricultural Marketing and Bargaining Board may be reviewed by the circuit court, although orders concerning unfair practices must be reviewed directly by the Court of Appeals; the role of the board in accreditation is so different from its role in unfair practice cases that in the absence of a clear legislative directive, the review procedure provided for unfair practice cases should not be applied to accreditation (MCL 790.705; MSA 12.94[105]).*

*Warner, Norcross & Judd* (by *Harold S. Sawyer* and *Ernest M. Sharpe,* of counsel) for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jon M. DeHorn,* Assistant Attorney General, for defendant The Agricultural Marketing and Bargaining Board.

*Foster, Swift & Collins, P. C.* (by *James A. White, Clifford D. Weiler* and *Michael J. Schmedlen),* for defendant The Michigan Agricultural Cooperative Marketing Association, Inc.

WILLIAMS, J. The instant case poses important questions of first impression regarding the constitutionality and construction of the Agricultural Marketing and Bargaining Act, MCLA 290.701, *et seq.;* MSA 12.94(101), *et seq.* Plaintiff Michigan Canners and Freezers Association also challenges the decision of defendant Agricultural Marketing and Bargaining Board to accept and accredit the Michigan Asparagus Growers Division of defendant Michigan Agricultural Cooperative Marketing Association [MACMA] as the sole bargaining rep-

resentative of the Processing Asparagus Bargaining Unit.

However, there has been no hearing in the courts below on the merits due to uncertainty on the preliminary procedural question as to which court should properly serve as a forum for the presentation of the issues posed in this case.

We remand to the circuit court for consideration of two issues: first, the constitutionality of the Bargaining Act, and second, the applicability of the Administrative Procedures Act to accreditation proceedings under the act.

## I. FACTS

In November, 1973, the Michigan Asparagus Growers Division of appellee Michigan Agricultural Cooperative Marketing Association, Inc. [MACMA] petitioned defendant Agricultural Marketing and Bargaining Board for a determination of an asparagus bargaining unit under the Michigan Agricultural Marketing and Bargaining Act [henceforth referred to as the Bargaining Act].

The board made such determination, and subsequently accredited Michigan Asparagus Growers as the sole sales and bargaining representative of the newly created Processing Asparagus Bargaining Unit, over the objection of plaintiff Michigan Canners and Freezers Association.

Michigan Canners brought an action in Ingham Circuit Court alternatively as a petition for review of a final decision of an administrative agency under the Administrative Procedures Act, MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.,* and as an original action seeking an injunction and declaratory ruling on the unconstitutionality and con-

struction of the Agricultural Marketing and Bar-
gaining Act.

The circuit court dismissed this action, ruling
that under § 5(2) of the Bargaining Act, all board
action requires review in the Court of Appeals.

Moreover, the circuit court explicitly declined to
exercise its "equitable jurisdiction" to examine the
constitutionality of the act. The court so ruled
because it did not want to establish a bifurcated
review procedure in which constitutional issues
would be before the circuit court while all other
issues were before the Court of Appeals.

In May of 1974, plaintiff filed for leave to appeal
and a claim of appeal with the Court of Appeals.
Both were denied in October, 1974.

Michigan Canners subsequently applied to this
Court for leave to appeal the dismissals by the
circuit court and the Court of Appeals.

Prior to granting of leave to appeal by this
Court, Michigan Canners filed a petition for review
in the Court of Appeals under § 5(2) of the Bar-
gaining Act seeking a review of the constitutional-
ity of the act and the procedures followed by the
board in accrediting the Michigan Asparagus
Growers Division.

MACMA moved to stay Court of Appeals pro-
ceedings pending decision by this Court on the
application for leave to appeal.

This Court granted leave on January 15, 1975.


II. REMANDING CONSTITUTIONAL CHALLENGE TO
CIRCUIT COURT

As mentioned above, plaintiff has raised impor-
tant questions regarding the constitutionality and
construction of the Agricultural Marketing and
Bargaining Act without developing a factual rec-

ord at trial which would help provide a context in which to consider these questions.

To resolve these significant issues in such a factual vacuum would be imprudent where it appears that further factual development would substantially contribute to the proper disposition of the case.

Such is the case here, especially in that Michigan Canners has claimed that the Bargaining Act is unconstitutional because it exceeds the police power of the state. This claim in particular requires full development of facts which might support or undermine the claim that the statute is an invalid exercise of the police power.

The police power, an attribute of state sovereignty, may be properly exercised through regulations which tend to foster the health, order, convenience and comfort of the people and to prevent and punish injuries and offenses to the public. It has as its object the preservation and/or improvement of social and economic conditions affecting the community at large. Such power is elastic in nature, changing shape as varying social conditions demand correction. *People v Sell*, 310 Mich 305, 315–316; 17 NW2d 193 (1945); *People v Brazee*, 183 Mich 259, 262; 149 NW 1053 (1914). *People v Raub*, 9 Mich App 114, 119; 155 NW2d 878 (1967).

As a matter of law, the party challenging the act carries the burden of overcoming the presumption of constitutionality which accrues to the statute. *Irishman's Lot, Inc. v Secretary of State*, 338 Mich 662, 667; 62 NW2d 668 (1954); *Thayer v Dept of Agriculture*, 323 Mich 403, 410; 35 NW2d 360 (1949). To overcome this presumption, plaintiff must show either that there is no public purpose to be served by the statute, or that there is no

reasonable relationship between the remedy adopted by the Legislature and the public purpose. *Grocers Dairy Co v Dept of Agriculture,* 377 Mich 71, 75; 138 NW2d 767 (1966); *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW 608 (1936).

As a practical matter, we ask both parties to contribute to the development of a factual context which will allow us to properly resolve the issue of the constitutionality of the act under the principles outlined above. What are the conditions in the farming and food processing industry which led to the enactment of the act? Is there an imbalance in the bargaining power of the growers and the handlers? If so, what are the consequences of that imbalance? Is the number of farmers in Michigan declining? Is the acreage of land devoted to farming on the decrease? Is there reason for concern about food supply in the future? Is there a trend toward larger farms, to the detriment of the small farmer, which might adversely affect the community at large? How will the operation of the act be beneficial or detrimental to producers, processors and consumers in the short run, and in the long run?

If any of the potential problems suggested above do exist, is there any evidence that the remedies embodied in the Bargaining Act are or are not reasonably related to the purpose of alleviating the problem(s)?

Defendant MACMA questions the appropriateness of the circuit court as a forum for the presentation of these issues given the language of § 5(2) of the Bargaining Act, MCLA 290.705(2); MSA 12.94(105)(2), providing in relevant part:

"Any person aggrieved by a final order of the board granting or denying in whole or in part the relief

sought may obtain a review of an order in the court of appeals, by filing in the court a written petition requesting that the order of the board be modified or set aside."

However, it is well established that a litigant challenging the constitutionality of a statute and seeking injunctive relief is not necessarily required to follow the appellate procedure provided for in the statute challenged. *Diggs v State Board of Embalmers & Funeral Directors,* 321 Mich 508, 513; 32 NW2d 728 (1948); *Asta v Department of Revenue,* 338 Mich 505, 511; 61 NW2d 608 (1953); *Smigel v Southgate Community School District,* 388 Mich 531, 557; 202 NW2d 305 (1972).

We remand to the circuit court so that evidence relevant to these questions, and other questions related to the constitutionality of the Bargaining Act, may be received by that court.

## III. APPLICABILITY OF APA TO ACCREDITATION PROCEEDINGS

Plaintiff asserts that the Administrative Procedures Act, MCLA 24.201 *et seq.;* MSA 3.560(101), *et seq.,* is applicable to the Bargaining Act, that the board failed to comply with the requirements of APA.

Defendant MACMA disputes the applicability of APA to the Bargaining Act, and asserts that the circuit court is not the proper forum for consideration of this issue under § 5(2). There has been no hearing on the merits of this issue in the courts below.

While the Court of Appeals no doubt has subject matter jurisdiction over this matter of construction, so also does the circuit court. Section 5(2) provides for original jurisdiction in the Court of

Appeals only for review of final orders of the
Agricultural and Marketing Board.

However, the issue of the applicability of the
APA to the Bargaining Act is not limited to the
validity of a particular order, but rather involves a
broad question of construction of the statute itself.

Therefore, there is no reason why plaintiff
should not be allowed to raise this question before
the circuit court on remand along with the consti-
tutional issues.

## IV. VALIDITY OF THE DECLARATION OF ACCREDITATION

The circuit court may not, however, consider
plaintiff-appellant's challenge to the validity of the
declaration of accreditation of the Michigan Aspar-
agus Growers on the merits for the Legislature has
dictated in § 5(2) of the Bargaining Act, MCLA
290.705(2); MSA 12.94(105)(2),[1] that the Court of
Appeals has original jurisdiction over such an
appeal.

Plaintiff-appellant asserts that the accreditation

---

[1] Section 5(2) of the Bargaining Act reads as follows:

"(2) Any person aggrieved by a final order of the board granting or
denying in whole or in part the relief sought may obtain a review of
an order in the court of appeals, by filing in the court a written
petition requesting that the order of the board be modified or set
aside. A copy of the petition shall be transmitted by the clerk of the
court to the board and the aggrieved party shall file in the court the
record in the proceeding certified by the board. Upon the filing of the
petition, the court shall proceed in the same manner as in the case of
an application by the board under this section and shall have the
same jurisdiction to grant temporary relief or a restraining order as it
deems just and proper, and in like manner to make and enter a
decree enforcing, modifying and enforcing as so modified, or setting
aside in whole or in part the order of the board; the findings of the
board with respect to questions of fact if supported by substantial
evidence on the record considered as a whole shall in like manner be
conclusive."

is invalid in that it is not based on substantial evidence of compliance with § 7 of the act,[2] as is required by § 5(2).

It is further argued that such a claim may be heard by the circuit court because the declaration of accreditation is not an "order", as that term is used in § 5(2), which must be reviewed by the Court of Appeals.

---

[2] Section 7 of the Bargaining Act reads as follows:

"Sec. 7. An association shall be accredited upon determination by the board that the association meets all of the following:

(a) The association meets the requirements of the Capper-Volstead act, 7 U. S. C. 291-2.

(b) The association has submitted a copy of its bylaws which provide that: Each member of the association shall have 1 vote in all votes of the membership of the association; that officers or directors shall be elected by a majority of the members voting or by delegates representing a majority of the membership; and that all elections shall be by secret ballot.

(c) The association has marketing and bargaining contracts for the current or next marketing period with more than 50% of the producers of an agricultural commodity who are in the bargaining unit and these contracts cover more than 50% of the quantity of that commodity produced by producers in the bargaining unit. The board may determine the quantity produced by the bargaining unit using information on production in prior marketing periods, current market information, and projections on production during the current market periods. The board shall exclude from that quantity any quantity of the agricultural commodity contracted by producers with producer owned and controlled processing cooperatives and any quantity produced by handlers. An association whose main purpose is bargaining but which processes a surplus into a form which is not the subject of bargaining is not a processing cooperative. The contracts with members shall specify the agricultural commodity and that the members have appointed the association as their exclusive agent in negotiations with handlers for prices and other terms of trade with respect to the sale and marketing of the agricultural commodity and obligate them to dispose of their production or holdings of the agricultural commodity through or at the direction of the association.

(d) The association has established and authorized a marketing and bargaining committee to negotiate with handlers for the agricultural commodity. The committee shall be comprised of members elected by the members in a secret ballot election. The production of the agricultural commodity shall comprise a significant portion of the total farming operation of each committee member. Members who have any quantity of the commodity contracted with a producer owned and controlled processing cooperative are not eligible to serve on a marketing and bargaining committee for such commodity."

We disagree with the claim that the declaration of accreditation is not an order under § 5(2).

In the first instance, we find it difficult to understand plaintiff's saying that § 5(2) applies to accreditation in establishing a requirement of substantial evidence in Court of Appeals review, and yet, does not apply to accreditation in establishing original jurisdiction in the Court of Appeals.

Moreover, an examination of the statute does not support plaintiff's claim that the Legislature intended to establish a bifurcated review procedure for actions of the board in which dispositions regarding unfair practices under the act are "orders" to be reviewed by the Court of Appeals, while dispositions regarding accreditation are "determinations" to be reviewed in the circuit court.[3]

First, it should be noted that what is being challenged here is not merely a determination, but rather a "declaration of accreditation" which is issued after the board has determined that an association should be accredited.[4] While this declaration is not termed an "order" specifically, it functions as a binding order 30 days after publica-

---

[3] Plaintiff supports this claim by arguing that § 4 of the act, which deals with unfair practices, uses the word "order," while § 6 through 10, which deal with accreditation, speak of "determinations."

[4] See § 10(1) of the Bargaining Act, which reads as follows:

"(1) The board shall issue and publish its determination within 30 days after the close of the hearing. If the determination of the board is to accredit the association, the board shall include a preliminary declaration of accreditation in its determination. The preliminary declaration of accreditation shall clearly state that the association shall represent all producers, members and nonmembers alike, who are in the bargaining unit and act as exclusive sales agents for the bargaining unit in negotiations with handlers. A producer covered in a declaration of accreditation may join the association and have full membership rights therein. Handlers shall deduct marketing service fees from the proceeds to be paid to producers for the agricultural commodity in the amount as determined by the association and forward the service fees promptly to the association. The fees shall be within guidelines determined by the board and shall be subject to review by the board upon petition by 15% of the affected producers."

tion, absent a challenge to the declaration meeting the requirements of § 10(2) of the act.[5]

Furthermore, the use of the word "determination" throughout the act does not suggest, as plaintiff-appellant claims, that the Legislature had carefully chosen this word to inferentially create a bifurcated review system in which the accreditations of bargaining associations are to be reviewed in a forum different from all other actions of the board.

The word "determination" is used with neither great precision nor consistency. In § 9, for example, the words determination and finding are used interchangeably for no apparent reason. In subsection (1), the Legislature used the words "determine" and "determination", while in subsection (2), there is a shift to the word "finding", though it is apparent that no change in meaning was intended.[6]

---

[5] Section 10(2) of the Bargaining Act reads as follows:

"(2) The accreditation of the association by the board shall be effective 30 days after the publication of the preliminary declaration of accreditation. The board shall delay the accreditation of the association whenever it receives during the 30-day period a petition signed by at least 1/3 of the producers in the bargaining unit who produce at least 1/3 of the production of the agricultural commodity produced by the bargaining unit, exclusive of quantities contracted with processing cooperatives and produced by handlers, and requesting that the association should not be accredited. The board shall determine by a mail referendum of bargaining unit producers within 30 days following receipt of the petition if producers assent to the accreditation of the association. Producers in the bargaining unit shall be deemed to have assented to accreditation if more than 50% of the producers in the bargaining unit who produce more than 50% of the volume of the affected commodity assent to representation by the association."

[6] Section 9 of the Bargaining Act reads as follows:

"(1) Within 60 days following the date of filing with the board a request for accreditation by an association, the board shall determine whether the association shall be accredited. If the board *determines* that insufficient evidence was filed by the association, the board may permit the association to file an amended request for accreditation within 30 days following the *determination* and notification of the association.

"(2) Within 30 days following the board's preliminary *finding* that

In § 16, which deals with arbitration procedure, the word "determine" is used interchangeably with the word "find" and the word "determination" is used interchangeably with the word "finding", again, for no apparent reason.[7]

Moreover, the wording "finding" seems to be equivalent in this section to an order under § 5(2), for it is said that "This finding [of a reasonable quantity] shall be enforced in accordance with the provisions of section 5". MCLA 290.716(1); MSA 12.94(116)(1).

Such word usage does not suggest that the Legislature intended to establish a strict distinction between orders and determinations under § 5(2).

the association is to be accredited, the board shall hold a public hearing to obtain further evidence relevant to confirmation that the association is to be accredited. Producers of record involved in the bargaining unit shall be notified of the hearing by mail and publication in a newspaper of general circulation in the bargaining unit area at least 10 days prior to the date of the hearing." (Emphasis added.)

[7] Section 16 of the Bargaining Act reads in pertinent part as follows:

"Where the quantity of the agricultural commodity to be marketed is in dispute, the handler shall offer to accept for delivery a reasonable quantity of the agricultural commodity. This offer shall be made in writing to the accredited association at least 7 days prior to the start of the marketing period. A copy of this offer shall be sent by registered mail to the board. The accredited association may file a claim for relief with the board if it feels that the offer is unreasonable. The board shall *determine* the issue of reasonableness at a hearing in accordance with Act No. 306 of the Public Acts of 1969, as amended. This *determination* shall have priority over all other board matters. The board shall base its *determination* on: (a) Projections as to the quantity of the agricultural commodity to be produced, (b) the relationship between the quantity of the commodity available and the amount of the quantity accepted by the handler, (c) the kind, grade, and quality of the commodity available, and (d) the past practices of the handler in relation to the items in subdivisions (a), (b) and (c). If, upon the preponderance of the evidence, the board is of the opinion that the quantity is unreasonable, it shall *order* the handler to accept the quantity which the board *finds* to be reasonable. The *finding of the board shall be final,* subject to later modification by the joint settlement committee. *This finding shall be enforced in accordance with the provisions of section 5.* Within 15 days following the start of the marketing period for the agricultural commodity, the board shall establish a joint settlement committee to arbitrate the issues in dispute." (Emphasis added.)

The bifurcated system of review which plaintiff-appellant argues for would create unnecessary inconvenience and expense for parties disputing actions of the board, and we decline to conclude that the Legislature intended such without stronger indications of such intent.

## V. CONCLUSION.

We remand to the circuit court for consideration of the questions of the constitutionality of the Agricultural Marketing and Bargaining Act, and the applicability of the Administrative Procedures Act to accreditation proceedings under the Bargaining Act. We retain appellate jurisdiction over the other issues presented in this case, and will consider those issues, along with the questions hereby remanded to the circuit court, subsequent to the disposition by the circuit court.

KAVANAGH, C. J., and LEVIN, J., concurred with WILLIAMS, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

COLEMAN, J. *(concurring in part; dissenting in part).* Although it is accepted that the concept of police power is somewhat "elastic in nature", there is a danger here that it be stretched so far as to have no real meaning. Proposed standards such as that which fosters the "convenience and comfort of the people" or preserves and improves "social and economic conditions affecting the community at large" could justify almost any imaginable action.

Remand is proposed because the claim that the statute exceeds the police power "in particular

requires full development of the facts". I agree
with the remand providing that the trial judge
develop those facts deemed pertinent, but I would
leave discussion of the constitutional question un-
til we have the facts.

Unlike Justice WILLIAMS, however, I believe the
circuit court may review the declaration of accred-
itation, although orders concerning unfair prac-
tices should be reviewed directly by the Court of
Appeals.

The Agricultural Marketing and Bargaining Act,
MCLA 290.701 *et seq.;* MSA 12.94(101) *et seq.,* was
designed

"to permit producers of agriculture commodities to be
represented by associations; to create an agricultural
marketing and bargaining board; to provide for the
accreditation of associations; to establish obligations on
the part of handlers and associations; to provide for
arbitration; to define unfair practices; and to prescribe
penalties."

Agricultural commodities are "all perishable
fruits and vegetables as defined by the board".
MCLA 290.702(f); MSA 12.94(102)(f). Producers of
commodities may form

"a cooperative association of producers or a division
thereof, or federation of cooperative associations of
producers engaged in the marketing, bargaining, ship-
ping or processing functions of an agricultural commod-
ity on behalf of its members who are producers of such
agricultural commodity." MCLA 290.702(a); MSA
12.94(102)(a).

Associations may seek accreditation from the
board. See MCLA 290.707–290.710; MSA
12.94(107)–12.94(110). The board has 60 days to
make a preliminary determination. If accredita-

tion is recommended, a public hearing must be held within 30 days. After the hearing, the board has 30 days to issue and publish its determination. The accreditation "shall be effective 30 days after the publication" unless objection is made by at least 1/3 of the producers who together produce at least 1/3 of the commodity.

If an objection is made, the board must hold a "mail referendum" within 30 days to "determine * * * if producers assent to the accreditation of the association". If "more than 50% of the producers * * * who produce more than 50% of the volume of the affected commodity" agree to be represented by the association, then producers "in the bargaining unit shall be deemed to have assented to accreditation". MCLA 290.710(2); MSA 12.94(110)(2). With assent, accreditation is effective immediately; without it, accreditation is denied. MCLA 290.710(3); MSA 12.94(110)(3).

An accredited association "shall represent all producers, members and nonmembers alike". It acts "as exclusive sales agents for the bargaining unit in negotiations with handlers". MCLA 290.710(1); MSA 12.94(110)(1). This is an expansive grant of authority. The Legislature provided a deliberate procedure permitting informed decision-making by the producers. The board does not make the ultimate determination of accreditation. That decision lies in the hands of the producers.

Compare with this the Legislature's concern with unfair practices. All associations, accredited or not, are covered. They are protected from the unfair practices of handlers. MCLA 290.704(1); MSA 12.94(104)(1). They are prohibited from committing unfair practices against handlers. MCLA 290.704(2); MSA 12.94(104)(2).

The board may receive complaints. If it "consid-

ers that there is reasonable cause to believe that a person charged has committed a practice in violation of this act", the board must hold a hearing. MCLA 290.704(3); MSA 12.94(104)(3). If "a preponderance of the evidence" shows a violation, the board "shall issue * * * an order requiring him to cease the violation and shall order further affirmative action as will effectuate the policies of this act". MCLA 290.704(4); MSA 12.94(104)(4).

The Legislature selected the Court of Appeals as the forum to review the board action. The board "may petition the court of appeals for the enforcement of its orders, and for appropriate temporary relief or restraining order". MCLA 290.705(1); MSA 12.94(105)(1). This gives the court "jurisdiction of the proceeding and of the question determined". It "may grant temporary relief or restraining order as it deems just and proper". It may enforce, modify or set aside the board's order. Anyone aggrieved by the board's final order may obtain a similar review. MCLA 290.705(2); MSA 12.94(105)(2).

Unfair practices involve coercion, intimidation, conspiracy and acts disrupting the normal handling of perishable commodities. The board is obliged to hold a hearing, make a record and state its findings of fact which are conclusive "if supported by substantial evidence on the record considered as a whole". The Court of Appeals may order the taking of additional evidence.

Unfair practice complaints demand prompt action to prevent damage to crops and to defuse explosive situations. The Legislature gave the board authority to order that violations cease. The board may order that affirmative actions be taken. Its role in those situations differs greatly from the accreditation process. In the absence of a clear

legislative directive, the review procedure provided for unfair practice cases should not be applied to accreditation.

FITZGERALD, J., concurred with COLEMAN, J.

## ORDER

Entered November 1, 1976.—REPORTER.

On order of the Court, the motion for clarification of opinion is considered, and the same is granted. As to question 1 presented, it is ordered that the parties be permitted to present evidence on the constitutional questions already raised in this case. As to question 2, the circuit court may render an opinion concerning the applicability of the Administrative Procedures Act, but a dispositive order on the question shall not be issued until this Court issues final process after considering the case after the remand proceedings. As to question 3, the parties have a right to return to this Court upon completion of the remand proceedings.

The motion for leave to amend complaint and/or add additional ground of appeal is considered, and the Court, under GCR 1963, 865.1(1) and 865.1(3), hereby allows plaintiffs-appellants to amend their verified complaint and permits the issue raised by plaintiffs-appellants to be added to the issues on appeal.

LINDEMER and RYAN, JJ., not participating.